CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUN 16 2006

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:05CR00041-2 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| KEVIN L. ALLEN, | ) | |
| a/k/a "Slim" | ) | |
| | ) | By:   B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned an multiple count Superseding Indictment[1] charging defendant in Count One with knowingly and intentionally combining, conspiring, confederating, and agreeing with persons known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as crack cocaine, and 500 grams or more of a mixture or substance containing a detectable amount of cocaine hydrochloride, also known as cocaine powder, Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846; in Count Fourteen with knowingly and intentionally distributing a mixture or substance containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1).

---

[1]As noted in the plea agreement Count Two of the Superseding Indictment has been dismissed by prior order of the Court.

On June 5, 2006, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count One of the Superseding Indictment. The government has agreed to dismiss the remaining count of the Superseding Indictment upon acceptance of plaintiff's guilty plea.

At this hearing the defendant was placed under oath and testified that his full legal name is Kevin D. Allen, that he was born on July 20, 1960, and that he graduated high school. The defendant stated that he can read, write, and understand the English language. The defendant also stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offense.

The defendant testified that he had received a copy of the Superseding Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises, assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offense with which he is charged in Count One is a felony, and that if his plea is accepted, he will be adjudged guilty of that offense. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per felony count, and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The

2

defendant acknowledged that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Count One, including any facts related to sentencing. The defendant further acknowledged that he consented to forfeit any right, title and interest he has in assets purchased with proceeds of his illegal activity, directly or indirectly, and that such a forfeiture of property is proportionate to the degree and nature of the offense he committed and does not raise any of the concerns addressed in *United States v. Austin*, 113 S.Ct. 2801 (1993). The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within thirty days of the date of the plea agreement. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count One, is life imprisonment and a fine of $4,000,000, together with supervised release. The defendant was also informed that Count One has a mandatory minimum of ten years imprisonment. The defendant was informed that the maximum

3

possible penalty provided by law for the offense with which he is charged in Count Fourteen is twenty years imprisonment and a fine of $1,000,000, together with supervised release.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because he meets the listed criteria, he should be granted an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, he must provide such assistance in a manner set forth in the plea agreement. The defendant stated that he understood that a determination as to whether he had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant was informed that a maximum of four sentencing points may be added to or subtracted from his sentencing level depending on his role in the offense. The defendant testified that he and the government agreed that for purposes of USSG §§ 2D1.1 and 1B1.3 he would be held responsible for at least 500 grams but less than 1.5 kilograms of cocaine base. The defendant was informed that the government will recommend that he receive a sentence of incarceration at the low end of the applicable sentencing guidelines range and that the government will object to any

4

motion for downward departure that he might make.

The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1.  The right to plead not guilty to any offense charged against him;
2.  The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3.  The right of assistance of counsel at trial and in any subsequent appeal;
4.  The right to see, hear and cross-examine witnesses;
5.  The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6.  The right to decline to testify unless he voluntarily elects to do so in his own defense;
7.  The right to a unanimous guilty verdict; and
8.  The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to

5

serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea. The defendant asked the court to accept his plea of guilty to Count One of the Superseding Indictment.

## THE GOVERNMENT'S EVIDENCE

The government has provided a Factual Summary to which defendant did not object.[2] The evidence presented therein regarding the offense charged is as follows:

Investigators received information that the defendants and others were involved in a conspiracy to distribute cocaine base and cocaine hydrochloride in Charlottesville, Albemarle County and elsewhere. The conspiracy operated from at least some time in 2004 until at least in or about February 2006. Eric Washington was one of the primary sources of the drugs used to supply this conspiracy. (Norman Bell a/k/a "Muggy" Bell had supplied powder to Kenneth Allen and Paula Hubbard in the past). While Washington provided powder cocaine, most of this cocaine was converted into crack. Washington knew that a large amount of the powder was being so converted. Washington supplied directly to Kenneth Washington and Paula Hubbard. Kenneth Allen and Hubbard, who had a romantic as well as business relationship, distributed to others, including Kenneth Allen's brother Kevin Allen, a/k/a "Slim, and the drugs made their way eventually to Burton and others. Other individuals, who have not been charged federally, were involved in this conspiracy, including Omar Moore (who sold drugs for Kevin Allen and was charged by the state).

_____

[2] The government's agent testified at the hearing. A Factual Summary was subsequently provided by the government to substitute the agent's testimony. The defendant had no objection to the Factual Summary.

6

This conspiracy was responsible for the distribution of multiple kilograms of crack and multiple kilograms of powder cocaine. Kenneth Allen is responsible for 1.5 kilograms or more of cocaine base being distributed or possessed with intent to distribute during this conspiracy; Kevin Allen is responsible for at least 500 grams but less than 1.5 kilograms of cocaine base during this conspiracy; and Wendy Burton is responsible for at least 35 grams but less than 50 grams of cocaine base. Although Washington supplied mostly powder cocaine, the majority of the drugs was distributed as crack cocaine.

Members of the conspiracy cooked powder cocaine into crack cocaine. Members of this conspiracy used houses and hotels in the area to sell drugs including houses at 716 Park Street and 939-E Henry Avenue (Burton's home) in Charlottesville, and various hotels in Charlottesville and Albemarle County, including the English Inn, Holiday Inn, Red Carpet Inn, and Fairfield Inn. At times during the conspiracy, Kenneth Allen and Paula Burton lived at the Park Street house. Drugs were sold and powder cocaine was converted to crack at this house. Wendy Burton was a tenant at the house at 939-E Henry Avenue. Burton was a drug user who allowed people to sell from her home in exchange for crack. Kevin Allen sold drugs, in large part, at this house.

Controlled buys were made from each of these three defendants. A search warrant was executed at a room at the English Inn on or about July 21, 2005. Prior to the execution of the warrant, investigators conducted a controlled buy of crack from Kenneth Allen at the same hotel room. Kenneth Allen and other individuals were present when the warrant was executed. Investigators located an occupant by a toilet that had just been flushed; a crack stem remained in the toilet bowl. Kenneth Allen had more than $2000 in his wallet, which included some of the buy money from the recent controlled buy. Investigators recovered more than $3000 from a bag on a

7

sofa. Among other items recovered during the search were approximately 182 grams of cocaine hydrochloride, approximately 2.4 grams of cocaine base, small quantities of heroin and marijuana, as well as scales, baggies, coffee pots and other glass items that appeared to have cocaine residue, and other evidence.

During another search conducted pursuant to a search warrant that was executed at the Henry Avenue (Burton's) home, in response to an investigator's questions concerning the presence of any guns, Burton directed the investigator to a Ruger Standard Model caliber 22 pistol, serial number 12-28857, which was recovered in the same bedroom that Burton was in. Burton told investigators she had taken the gun from a man who had threatened to kill himself. The gun was not manufactured in the Commonwealth of Virginia and thus affected interstate commerce.

## FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1.   The defendant is fully competent and capable of entering an informed plea;

2.   The defendant is aware of the nature of the charges and the consequences of his plea;

3.   The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Superseding Indictment; and

4.   The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept

8

the defendant's plea of guilty to Count One and adjudge him guilty of that offense. A sentencing hearing hereby is scheduled for September 6, 2006 at 10:45 p.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

6-16-06
Date

9